IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DERRICK JUBECK

        Plaintiff,

                                       Case Number 2:21 cv 00072-CRE

   v.

ORLANDO HARPER, ALLEGHENY
COUNTY, JASON BEASOM, HERMITA
THOMAS, DAVID HUNGERMAN, IAN
JACKSON, MICHELLE GILDEA, JOHN
DOE CORRECTION OFFICERS, DAVID
ZETWO, JUSTIN FIRESTINE, DANIEL
BOSI, HEATHER GREENWALT,
RAYMOND FLEISNER, DAVID
HOLLAND, IVAN MILICEVIC, RICH
GERBER, and STEPHANIE FRANK,

        Defendants.

## FIRST AMENDED COMPLAINT IN CIVIL ACTION

AND NOW, come Plaintiff DERRICK JUBECK, by and through his attorney, STEVEN

M. BARTH, ESQUIRE, and file the following FIRST AMENDED COMPLAINT:

## INTRODUCTION

According to the protection from abuse policy of the Allegheny County Jail ("ACJ"),

"Inmates incarcerated at the Allegheny County Jail shall not be subjected to personal abuse,

corporal punishment, personal injury, disease, property damage or harassment. Every effort will

be made to ensure inmate property is protected." Further, it is well recognized that "classification

and other staff shall make individualized determinations on how to ensure the safety of every

inmate."  It is the correctional staff's job to prevent physical attacks on inmates by other inmates

known to be predators. The correctional staff also must know the prior history of violence

against other inmates when supervising inmates. It is also the correctional officer's job to

1

supervise the inmates being held in sally ports on Pod 4A/intake unit due to housing of several inmates who are classified differently.  The ACJ management came up with these policies and procedures in order to protect the public and the inmates as well as the correctional staff that work in the jail. These policies are well known in the jail and prison industry and are recognized as policies that must be adhered to in order to protect all persons' constitutional rights. Further, the ACJ management know that camera locations are important and that failure to place those cameras in locations creates a substantial risk to inmates who are housed with inmates labeled as predators. Lastly, in the alternative, ACJ management failed to implement any method or process by which inmates were assessed and/or classified as being a potential victim or a potential predator.

Moreover, at all times relevant hereto, the ACJ was aware of the guidelines set forth in the Prison Rape Elimination Act of 2003 ("PREA"), and thus knew that inmates should be assessed during their incarceration as being a potential victim or predator.

The ACJ is comprised of pods. Pod 4A is known as an intake pod/unit where inmates are taken when they first enter the jail as well as where inmates are taken when they are scheduled to leave the jail. On Pod 4A, a sally port entrance is present, which consists of a space between two doors that allows one door to be locked before the other is opened. The room is small for the amount of inmates held in that room. Even though the jail recognizes that proper classification prevents violent inmates from attacking other inmates, no policy or procedure exists which prevents multiple inmates from being put in the pod's sally ports at the same time. There is also no policy or procedures in place which require the sally port to be under visible video surveillance in order to properly supervise the inmates. There is also no policy in place and/or ignored by staff and/or the staff is not properly trained in which constant supervision of inmates while in the sally port is required. The need for constant supervision is due to the fact that

2

inmates of varying classifications are being housed in a small holding area.

Further, the jail did not have a policy to place correctional officers with inmates in the sally port who previously assaulted other inmates in order to prevent inmate on inmate violence.

The inmate separation policy and procedures in place at the time were inadequate and unconstitutional pertaining to inmates who were likely victims to known predators.

An inadequate amount of correctional staff was assigned to this area in order to protect inmates from known violent inmates.

No written policy and/or inadequate policy and procedure was in place for conducting a security classification review or dangerous review after an inmate showed assaultive behavior.

On or about October 10, 2018, Mister Mitchell, an inmate at ACJ, violently assaulted another inmate in intake cell H3, which is a pretrial holding cell. This is a cyber link to the video of the attack and the aftermath:


https://www.dropbox.com/sh/9gs0a37djod1wpp/AABUo_Z-oj_GZOBB5qwtGjhba?dl=0


A misconduct report was filed against Mister Mitchell. No criminal charges were filed against Mister Mitchell because of this conduct.

On or about May 27, 2019, Mister Mitchell, an inmate at the ACJ, violently assaulted another inmate in cell H15 in intake. Correctional Officers were called and removed Mister Mitchell from the pod where the attack occurred. The inmate who was assaulted was treated at medical. According to an inmate who spoke with Mister Mitchell, Mister Mitchell assaulted the inmate because "he looked at me like I was a faggot." A misconduct was filed. No criminal charges were filed against Mister Mitchell.   Mister Mitchell was placed in DHU status after this incident. No video was secured of this attack or preserved by ACJ.

On May 30, 2019, Mister Mitchell was taken out of DHU and  placed in the sally port of Pod 4A. Other inmates were present in the sally port including Derrick Jubeck, who was at the Allegheny County Jail ("ACJ") for a revoked bond in a 2017 DUI case.  During intake at ACJ, Mr. Jubeck identified himself as an openly gay man when asked by the personnel at the jail. On this date, Mr. Jubeck was in the process of being released from ACJ. As Mr. Jubeck walked near Mister Mitchell who wordlessly punched Mr. Jubeck in the face, immediately knocking him unconscious. Mister Mitchell continued to assault Mr. Jubeck as he laid unconscious. No correctional officers were monitoring or escorting Mister Mitchell at the time of the attack. The only persons in this sally port were inmates which included Mister Mitchell and Mr. Jubeck. Here is the video of the incident:


https://www.dropbox.com/sh/6lk66dju69eijni/AADG_gUiP7XPyH1mW72gIeata?dl=0


The ACJ was aware of the risks of harm that its practice of allowing multiple inmates into a sally port posed to inmates who were not classified as predators or who were unclassified. The harm to Mr. Jubeck is the direct consequence of those practices, as well as the ACJ's failure to adequately implement policies and training to ensure the safety of inmates being released from the jail. Neglecting its clear constitutional obligations as well as the requirements set forth under their own policies and procedures, which include the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601, *et seq.,* the ACJ has failed to prevent foreseeable, ongoing and severe harm to Mr. Jubeck.

Mr. Jubeck brings this action pursuant to 42 U.S.C. § 1983 against Defendant Allegheny County ("Allegheny County") and ACJ officials and employees (collectively, "Defendants") for depriving him of his rights guaranteed by the Fourteenth Amendment to the United States

4

Constitution.

## **PARTIES**

1.      Plaintiff, Derrick Jubeck, is an adult individual residing in Allegheny County, Pennsylvania.

2.      At all times relevant hereto, Defendant, ORLANDO HARPER (hereinafter "HARPER") was the Warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail.  As such, he was responsible for the training, supervision, direction, procedures and conduct of all guards, and was responsible for the health and safety of inmates within the Allegheny County Jail.

3.      At all times relevant hereto, Defendant HARPER was responsible for creating and executing policies to ensure the safety, health, and availability and provision of care, custody and control of all inmates within the Allegheny County Jail.  Accordingly, Defendant HARPER was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate care and custody to inmates.

4.      At all times relevant hereto, Defendant HARPER represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant HARPER acted under color of state law in those regards.

5.      At all times relevant hereto, Defendant JASON BEASOM , (hereinafter "BEASOM") was the deputy warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail.  As such, he was responsible for the training, supervision, direction, procedures and conduct of all guards, and was responsible for the health, safety, custody and control of inmates within the Allegheny County Jail.

6.     At all times relevant hereto, Defendant BEASOM represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant BEASOM acted under color of state law in those regards.

7.     At all times relevant hereto, Defendant BEASOM was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate care, custody and control to all inmates within the Allegheny County Jail.  Accordingly, Defendant BEASOM was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate care, custody and control to inmates.

8.     At all times relevant hereto, Defendant, DAVID ZETWO , (hereinafter "ZETWO") was the deputy warden of the Allegheny County Jail charged with the control and supervision of all guards employed within the jail.  As such, he was responsible for the training, supervision, direction, procedures and conduct of all guards, and was responsible for the health, safety, custody and control of inmates within the Allegheny County Jail.

9.     At all times relevant hereto, Defendant ZETWO represented the legal authority and official policy of ALLEGHENY COUNTY pertaining to guard actions, duties, responsibilities, training, procedures, supervision regarding the safety, health, availability and/or provision of adequate care, custody and control of inmates.  As such, Defendant ZETWO acted under color of state law in those regards.

10.     At all times relevant hereto, Defendant ZETWO was responsible for creating and executing policies to ensure the safety, health, and availability and provision of adequate care, custody and control to all inmates within the Allegheny County Jail.  Accordingly, Defendant

ZETWO was responsible for formulating and implementing jail guard procedures to protect the safety, health, availability and/or provision of adequate care, custody and control to inmates.

11.     Defendant, DAVID HUNGERMAN, is employed by Allegheny County and is a shift commander at the ACJ (hereinafter "Defendant HUNGERMAN"). At all relevant times, Defendant HUNGERMAN acted under color of state law and in accordance with the policies, customs and practices of the ACJ. Defendant HUNGERMAN is sued in his individual capacity.

12.     Defendant, HERMITA THOMAS, is employed by Allegheny County and is a supervisor of classification (hereinafter "Defendant THOMAS"). At all relevant times, Defendant THOMAS acted under color of state law and in accordance with the policies, customs and practices of the ACJ. Defendant THOMAS is sued in her individual capacity.

13.     At all times relevant hereto, the Defendant ALLEGHENY COUNTY was a local state agency organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to and maintaining the Allegheny County Jail for the purposes of safely detaining, incarcerating and rehabilitating citizens and inhabitants of Allegheny County.

14.     Defendant, IAN JACKSON, (hereinafter referred to as "Defendant JACKSON"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Corrections Officer for the Allegheny County Jail and was one of the correctional officers on Pod 4A on May 30, 2019. He was responsible for managing, implementing policy, supervising, making rounds, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

15.     Defendant, MICHELLE GILDEA, (hereinafter referred to as "Defendant GILDEA"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Corrections Officer for the Allegheny County Jail and was one of the correctional officers on Pod 4A on May 30, 2019. She was responsible for managing,

implementing policy, supervising, making rounds, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

16.     Defendant, JUSTIN FIRESTINE, (hereinafter referred to as "Defendant FIRESTINE"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Corrections Officer for the Allegheny County Jail and was one of the correctional officers on Pod 4A on May 30, 2019. He was responsible for managing, implementing policy, supervising, making rounds, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

17.     At all times relevant hereto, Defendants, JOHN DOE, (hereinafter referred to as "Defendant DOE") was one of the correctional officers who allowed the other inmates to exit the sally port which included Derrick Jubeck and Mister Mitchell on May 30, 2019. Defendant DOE was responsible for managing, implementing policy, supervising, making rounds, placing inmates in sally ports with other inmates and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

18.     Defendant, DAN BOSI, (hereinafter referred to as "Defendant BOSI"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Captain at the Allegheny County Jail and was involved in an incident that occurred with Mister Mitchell assaulting another inmate in a similar situation on October 10, 2018. He was responsible for managing, implementing policy, supervising, making rounds, investigating inmates, recommending criminal charges, filing misconducts, overseeing and being involved in the misconduct process, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

8

19.    Defendant, HEATHER GREENWALT, (hereinafter referred to as "Defendant GREENWALT"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a sergeant at the Allegheny County Jail and was one of the staff involved in an incident with Mister Mitchell assaulting another inmate in a similar manner on October 10, 2018. She was responsible for managing, implementing policy, supervising, making rounds, investigating inmate on inmate assaults, filing misconducts, recommending criminal charges, overseeing and being involved in the misconduct process, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

20.    Defendant, RAYMOND FLEISNER, (hereinafter referred to as "Defendant FLEISNER"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Corrections Officer for the Allegheny County Jail and was one of the correctional officers involved in an incident that occurred between Mister Mitchell and another inmate he assaulted on October 10, 2018. He was responsible for managing, implementing policy, supervising, making rounds, placing inmates in sally ports with other inmates, filing misconducts, recommending criminal charges, investigating inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

21.    Defendant, DAVID HOLLAND, (hereinafter referred to as "Defendant HOLLAND"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Corrections Officer for the Allegheny County Jail and was one of the correctional officers involved in an incident that pertained to Mister Mitchell assaulting another inmate on October 10, 2018. He was responsible for managing, implementing policy, supervising, making rounds, filing misconducts, investigating inmates, recommending criminal charges,

supervising, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

22.     Defendant, IVAN MILICEVIC, (hereinafter referred to as "Defendant MILICEVIC"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a Correctional staff member for the Allegheny County Jail and was the approving ranking officer of the misconduct report filed on May 27, 2019 when Mister Mitchell assaulted another inmate in a similar manner as how Mr. Jubeck was assaulted on May 30, 2019. He was responsible for managing, implementing policy, supervising, making rounds, filing misconducts, recommending criminal charges, investigating inmates, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

23.     Defendant, RICH GERBER, (hereinafter referred to as "Defendant GERBER"), is an adult individual who at all times relevant hereto was employed by Defendant ALLEGHENY COUNTY as a sergeant at the Allegheny County Jail and was one of the correctional officers/sergeant on Pod 4A on May 27, 2019 when Mister Mitchell assaulted another inmate in a similar manner as how Mr. Jubeck was assaulted on May 30, 2019. He was responsible for managing, implementing policy, supervising, making rounds, filing misconducts, recommending criminal charges, investigating inmates, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

24.     Defendant, STEPHANIE FRANK, is employed by Allegheny County and is a captain at the ACJ (hereinafter "Defendant FRANK"). At all relevant times, Defendant FRANK acted under color of state law and in accordance with the policies, customs and practices of the ACJ. Defendant is sued in his individual capacity. She was responsible for managing, implementing policy, supervising, making rounds, filing misconducts, recommending criminal

charges, investigating inmates, placing inmates in sally ports with other inmates, and/or other relevant activity to provide adequate safety and protection to inmates from other inmates.

25.     At all times relevant hereto, the above defendants were responsible for the following duties and obligations at the jail:

a.)   Conducting formal disciplinary hearings regarding the above incidents pertaining to Mister Mitchell;

b.)   Conducting objective and full investigations of the incidents regarding Mister Mitchell and documenting his file and the ACJ's records accordingly;

c.)   Implement a written policy and procedures outlining how a decision is made to file criminal charges against an inmate who has assaulted other inmates;

d.)   Implement a written policy and procedure outlining allowing correctional staff and/or some governmental entity to initiate criminal charges against inmates who violently assault other inmates in order to promote a culture of safety and personal responsibility;

e.)   Implementing policies and procedures where inmate on inmate violence was discouraged and prevented;

f.)   Implementing a policy and procedure to properly investigate and identify witnesses to inmate on inmate assaults;

g.)   Maintaining a master records file or central records file of every prisoner which includes (1) name of the inmate, (2) photograph of the inmate and replacement photo if a change of appearance, (3) booking number, (4) names and alias of the individual, (5) current or last known address, (6) date of arrest and admission, duration of confinement, copy of the court order for legal basis of confinement, (7) name, title, agency and signature of the delivering officer, (8) specific charges at the time of arrest and booking, (9) gender, (10) age, (11) date of birth, (12) place of birth, (13) race, (14) present or last employment, (15) health or mental status, (16) emergency contact info, (17) driver's license and social security numbers, (18) notation on cash and property, (19) additional information concerning special custody requirements, (20) additional information regarding service needs or identifying birthmarks or tattoos;

g.)   Creating any comments to be sent with the inmate or added to the Master file by another jail or prison or special program regarding special circumstances, unusual or noteworthy behaviors, areas of concern and special security challenge areas such as prior misconducts for physical assaults of other inmates while incarcerated;

h.)   Document all notes and reports from any level of the organization or investigating agency such as local or state police, county police, sheriff department prepared in the course of their duties regarding the safety and security considerations, acts of violence or acts where the inmate is a victim of violence;

i.)    Documentation of any concerns under PREA regarding an inmates periods of incarceration;

j.)    Creating, complying and enforcing classification policy and procedure which shows the initial housing locations, security designations and any special issues that classification staff believes might have an impact upon an inmate's safety and the safety of others;

k.)    Proper supervision policies and procedures for the sally port on pod 4A for the room where inmates are held;

l.)    Creating, complying and enforcing training that promoted safety to inmates as well as staff;

m.)    Creating, complying and enforcing written inmate separation decision process/procedures;

n.)    Creating, complying and enforcing established staffing patterns/assignments for the jail staff;

o.)    Creating, complying and enforcing training for all correctional staff regarding inmate supervision;

p.)    Creating, complying and enforcing policy and procedure for conducting a security classification review or dangerous review after inmate exhibits assaultive behavior;

q.)    Creating, complying and enforcing housing assignments at all times that reflect security designations, custody needs, special problems and behaviors;

r.)    Document that formal disciplinary hearings were actually conducted upon inmates who assaulted other inmates;

s.)    Creating, complying and enforcing policy and procedure for movement of inmates for court proceedings or release which allow security comments or staff actions that would accompany such a transfer decision given the inmate's past actions against other inmates at minimum;

t.)    Creating, complying and enforcing policy and procedures outlining how a decision is made to file criminal charges against an inmates who assaults another inmate in the ACJ;

u.)    Adhering to the Performance Based Standards for Adult Local Detention Facilities promulgated by the American Correctional Association;

v.)    Creating, complying and enforcing policy and procedure which properly categorizes the types of misconducts possibly filed against inmates who assault other inmates;

w.)    Creating, complying and enforcing policy and procedure which determines if an inmate is a predator or a victim;

x.)    Creating, complying and enforcing policy and procedure which identifies inmates who are having a mental breakdown and are exhibiting signs and symptoms through violent outbursts against other inmates or staff;

y.)    Complying with PREA and other statutes, laws, industry standards and the like.

26.    At all times relevant hereto, Defendant ALLEGHENY COUNTY acted

through its agents, servants, and employees.

27.     By virtue of its conduct, through its agents, servants, and employees, in detaining, incarcerating, protecting and rehabilitating inmates at the Allegheny County Jail, Defendant ALLEGHENY COUNTY expressly assumed the duties of maintaining the health and safety of inmates with the provision and availability of adequate care, custody and control as well maintenance of clean, healthful, and safe conditions at the Allegheny County Jail.

28.     The maintenance of clean, healthy, and safe conditions and the provision of adequate care, custody and control to inmates within the Allegheny County Jail are operations and functions of the Defendant, ALLEGHENY COUNTY.

29.     At all times relevant hereto, all of the Defendants listed above are being sued in their individual capacity.

30.     From May 27 through May 30, 2019, Mister Mitchell was an inmate at the ACJ and had a history of violence against other inmates which was known to the Defendants in this matter.

## JURISDICTION AND VENUE

31.     This action arises under 42 U.S.C. §1983.  This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this civil action arises under the Constitution and the laws of the United States.

32.     Venue is proper in this District under 28 U.S.C. §1391(b) because all of the events, actions and omissions giving rise to the within claims occurred in this District.

## FACTS

33.     Each of the above paragraphs is incorporated herein by reference.

34.     At all times relevant hereto, the individual Defendants and Defendant

ALLEGHENY COUNTY were required to adhere to and enforce the following policy and

procedures:

a.)     These Defendants must consider inmate on inmate physical assaults prevention as one of the highest priorities of service within the correctional setting;

b.)     These Defendants must work together to identify inmates at risk for violence by other inmates;

c.)     These Defendants will have an outlined program for responding to inmate on inmate violence and attacks;

d.)     These Defendants must educate, train, enforce and/or adhere to the proper cell inspection when doing rounds in order to make sure that inmates are not attacking other inmates;

e.)     These Defendants must learn about an inmate's high-risk periods of being physically assaulted by other inmates particularly, if an inmate may be targeted for being gay and/or located in a secured sally port with a known violent inmate;

f.)     These Defendants must learn about the inmates housed on a pod in order to determine if any of the inmates are a threat to other inmates;

g.)     These Defendants must not place inmates into a sally port where a known predator and/or violent inmate is present pursuant to policy and procedure in order to prevent inmate on inmate violence on the pod;

h.)     These Defendants will review information of newly arriving inmates on a pod in this institution concerning issues related to being susceptible to physical intimidation and violence;

i.)     These Defendants are required to conduct the rounds on a pod and/or determine the classification of inmates in order to properly house them in or to prevent predator inmate violence upon other inmates;

j.)     These Defendants will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for "inmate on inmate" violence as well as targeting of inmates by other inmates for physical attack;

k.)     These Defendants who recognize an inmate as being potentially violent are to request immediate evaluation of the inmate through the nursing or mental health staff;

l.)     These Defendants' staff who recognize an inmate as being potentially violent are to request immediate evaluation of the inmate through the nursing mental health staff on Pods 5C, 5MD and 5D (once opened);

m.)    All assessments of potentially violent inmates are to be conducted by qualified professionals trained to determine an inmate's level of physical violence to other inmates;

n.)     Inmates who have been determined to be a threat to other inmates should be placed/housed according to institutional policy and procedures for the

monitoring of such individuals within the correctional setting. Regular documented supervision should be maintained;

o.)    Regular, documented supervision of a Pod should be maintained by a correctional officer/personnel;

p.)    Regular, documented rounds of a Pod should be maintained by a correctional officer/personnel;

q.)    Constant supervision of a Pod by a staff member is required and if a situation arises which requires intervention, it must be investigated immediately and intervention is required if the safety of an inmate is at issue;

r.)    The procedures for making rounds and how rounds are made as well as inspection of sally ports should be clearly outlined;

s.)    Clear, current and accurate information regarding an inmate must be communicated between shifts and correctional personnel pursuant to the procedures of communication;

t.)    The intervention plan on how to handle inmate on inmate violence that is in progress, including appropriate first aid measures, should be clearly outlined;

u.)    Procedures for notifying correctional administrators, outside authorities and family members of potential, attempted or completed inmate on inmate attacks will be in place;

v.)    Procedures for documenting the identification and monitoring of potential or attempted inmate on inmate attacks will be detailed, as well as procedures for reporting a completed inmate attack on another inmate;

w.)    The intervention plan should specify the procedure for administrative review if an "inmate on inmate" attack occurs on a Pod;

x.)    A formal procedure of collecting evidence and preserving evidence such as camera footage must be in place and clearly outlined;

y.)    Inmates should not be placed in the secured sally port at the same time when one of the inmates has a violent history or is classified a predator;

z.)    Creating, complying with, and enforcing a policy and procedure which required criminal charges to be filed against an inmate who continues to assault other inmates even if the victims refused to press charges;

aa.)    Creating, complying with, and enforcing a policy and procedure which required an inmate who assaulted other inmates to be housed separately for all purposes;

bb.)    Paragraph 24 and its subparts are incorporated here as if stated in full.

## PRIOR INCIDENTS OF VIOLENCE BY MISTER MITCHELL UPON OTHER INMATES

### Attack 1 - October 10, 2018

35.    On or about October 10, 2018, Mister Mitchell, an inmate at ACJ, violently

assaulted another inmate in intake cell H3, which is a pretrial holding cell.

36.     This is a cyber link to the video of the attack and the aftermath:

https://www.dropbox.com/sh/9gs0a37djod1wpp/AABUo_Z-oj_GZOBB5qwtGjhba?dl=0

37.     At all times relevant hereto, Mister Mitchell was not provoked by the other

inmate.

38.     At all times relevant hereto, Mister Mitchell was the aggressor in the attack.

39.     At a all times relevant hereto, Mister Mitchell was singled celled by the ACJ staff

after the attack.

40.     At all times relevant hereto, the following occurred:

   a.)   Defendant Fleisner, a correctional officer, witnessed the attack but called
         it a "fight" in his misconduct report;
   b.)   Defendant Fleisner reported this "attack" as a "fight" to his Sergeant, who
         was Defendant Greenwalt;
   c.)   The assault took place in the intake department;
   d.)   Defendant Greenwalt reports the attack to her captain, Defendant Bosi,
         who reviews the video of the attack;
   e.)   In the report authored by Defendant Bosi, he describes the incident as an
         "attack" which is different than the description of Defendant Fleisner;
   f.)   Defendant Fleisner alerted another correctional officer, Defendant
         Holland, that a "fight" occurred between Mister Mitchell and another
         inmate;
   g.)   Defendant Holland authored a report describing the incident as a "fight";
   h.)   No names of witnesses were gathered by the named Defendants;
   i.)   It is believed that the victim was not given the option to press criminal
         charges against Mister Mitchell;
   j.)   It is believed that none of the named Defendants recommended criminal
         charges against Mister Mitchell for this assault;
   k.)   It is believed that Mister Mitchell was never disciplined for this attack
         upon this inmate;
   l.)   It is believed that a formal investigation was not instituted to review this
         attack to make sure that all of the policies and procedures were complied
         with on this date;
   m.)   It is believed that none of the Defendants who were involved in this
         incident complied with their duties and obligations as stated in this first
         amended complaint;
   n.)   Mister Mitchell was not held accountable for this attack;
   o.)   It is believed that none of the above Defendants tried to document this
         incident pursuant to the policy and procedure of ACJ;

16

p.)   In the alternative, it is believed no policy or procedure was in place which required the Defendants to formally document and communicate this attack on the master file of Mister Mitchell in order to inform other correctional staff of this security risk;

q.)   It is believed that supervision of Mister Mitchell was not conducted in a manner that would protect jail staff and inmates.

41.   Only a misconduct report was filed against Mister Mitchell for this attack.

42.   Mister Mitchell was not placed in the restrictive disciplinary housing unit.

43.   No criminal charges were filed against Mister Mitchell because of this conduct on October 10, 2018.

44.   No witnesses were interviewed or identities secured by these Defendants.

**Attack 2 -- May 27, 2019**

45.   On or about May 27, 2019, Mister Mitchell, an inmate at the ACJ, violently assaulted another inmate in cell H15 in the intake unit.

46.   Correctional Officers were called and removed Mister Mitchell from the pod where the attack occurred.

47.   The inmate who was assaulted was treated at medical.

48.   According to an inmate who spoke with Mister Mitchell, Mister Mitchell assaulted the inmate because "he looked at me like I was a faggot."

49.   A misconduct was filed.

50.   No criminal charges were filed against Mister Mitchell.

51.   Mister Mitchell was placed in DHU status after this incident.

52.   No video was secured of this attack.

53.     At all times, relevant hereto, all of the Defendants knew that Mister Mitchell attacked another inmate without provocation on October 10, 2018 while housed in the intake unit.

54.     No video was secured of this attack by Defendants, Milicevic and Gerber.

55.     Only a misconduct report was completed by Defendant Gerber which was approved by Defendant Milicevic.

56.     No criminal charges were filed against Mister Mitchell for this attack.

57.     No witnesses were interviewed or identities secured by these Defendants.

58.     No formal misconduct hearings were performed by any of the Defendants regarding this attack.

**Conduct of the Defendants in the prior Attacks**

59.     It is believed and therefore averred, all of the Defendants who were involved in the attacks of October 10, 2018 and May 27, 2019, performed inadequate and unconstitutional investigations and documentations of these two attacks pursuant to the policies and procedures of the ACJ.

60.     In the alternative, it is believed and therefore averred, all of the Defendants who were involved in the attacks of October 10, 2018 and May 27, 2019, ignored the required policies and procedures required under custom, law, and policy and created a substantial risk of harm for all inmates housed with Mister Mitchell.

61.     Based on these two attacks by Mister Mitchell on these  inmates, the Defendants knew that he was violent and were required to reclassify Mister Mitchell due to this incident.

62.     Based on these two attacks by Mister Mitchell, all of the Defendants knew that Mister Mitchell should not be housed in a small room with other inmates due to the substantial risk of assault upon one of these inmates.

18

63.     It is further known by the Defendants that a classification can increase due to misconducts such as assaulting other inmates.

64.     All of the Defendants should have complied, enforced and/or created a policy that an inmate who has assaulted two other inmates while housed in the intake unit must be classified as dangerous or as predators.

65.     Further, it is a known policy that inmates classified to the maximum level cannot be housed with inmates classified at a minimum level.

66.     It is believed that this policy required the correctional officers and jail management to prevent maximum classified inmates from being housed or held with minimum classified inmates.

67.     It is also believed that all jail personnel are required to check the OMS system and/or master files of the inmates to make cell/holding assignments of inmates.

68.     It is believed and therefore averred that the Jail Defendants knew the substantial risk of harm to inmates housed with inmates classified similarly to Mister Mitchell.

69.     It is believed and therefore averred that the Jail Defendants knew the substantial risk of harm Mister Mitchell posed to any inmate placed in the pod/cell/sally port in the same area he was being held.

70.     Based on Mister Mitchell's classification and/or prior history of violence, all of the Defendants knew that Mr. Jubeck was placed at a substantial risk of harm by being placed in the sally port with Mister Mitchell.

**Attack 3 – May 30, 2019**

71.     At all times relevant hereto, it is believed that the individual Defendants and Defendant ALLEGHENY COUNTY knew or should have known of the conduct of Mister

Mitchell on Pod 4A/the intake unit and/or the cell in the transfer area between intake and Pod 4A

as well as his history at the ACJ due, but not limited, to the following:

      a.)    Prior misconducts filed against Mister Mitchell;

      b.)    Official Inmate Complaint forms;

      c.)    Confidential informants;

      d.)    Witnessing events;

      e.)    Witnessing attacks;

      f.)    Increased medical requests for unexplained injuries of persons housed with Mister Mitchell;

      g.)    Incident reports by correctional officers for unexplained injuries;

      h.)    Inmates refusing to cooperate or explain injuries;

      i.)    Misconduct report of October 10, 2018 attack;

      j.)    Misconduct report of May 27, 2019 attack;

      k.)    Any use of force reports that named Mister Mitchell as an inmate where use of force was utilized.

72.    At all times relevant hereto, the individual Defendants and Defendant

ALLEGHENY COUNTY knew that any inmate housed or held with Mister Mitchell on Pod

4A/the intake unit was at risk for a violent attack from Mister Mitchell.

73.    At all times relevant hereto, on Pod 4A/the intake unit, inmates are kept in

separate cells until they are assigned a floor.

74.    It is believed and pled in the alternative that the Plaintiff was unclassified and

should not have been placed in the sally port with Mister Mitchell which violated ACJ policy.

75.    It is believed and pled in the alternative that Mister Mitchell was unclassified and

should not have been placed in the sally port with any other inmates.

76.    At all times relevant hereto, the individual Defendants and Defendant

ALLEGHENY COUNTY recognized and knew that Mister Mitchell was a substantial risk of

harm to all inmates housed or held with him.

77.    At all times relevant hereto, the individual Defendants and Defendant

ALLEGHENY COUNTY recognized and knew that failing to adhere to classification policies

with inmates held in the secured sally ports created a substantial risk of harm to minimum

classified inmates who would be housed with predators/maximum classified inmates.

78.     At all times relevant hereto, the individual Defendants and Defendant

ALLEGHENY COUNTY recognized that inadequate staffing created a reckless risk of harm to

inmates and correctional officers.

79.     At all times relevant hereto, all of the individual Defendants knew of the risk that

Mister Mitchell posed to other inmates who were housed in the intake unit, particularly the cell

where the attack occurred with Mr. Jubeck.

80.     On or about May 30, 2019, based upon video surveillance footage referenced in

the criminal complaint of Mister Mitchell, the observations of Defendant Jackson and statements

by Mr. Jubeck were consistent with the footage.

81.     No correctional officers were monitoring or escorting Mister Mitchell at the time

of the attack.

82.     The only persons in this sally port after the other inmates exited the room were

Mister Mitchell and Mr. Jubeck.

83.     Defendant Jackson was not supervising the cells at the time of attack which was

contrary to ACJ policy and procedure.

84.     Defendant Does were not supervising the cells at the time of the attack which is

contrary to ACJ policy and procedure.

85.     None of the other Defendants named in this case were supervising the cell at the

time of the attack.

86.     In the alternative, Defendant Jackson was not trained by any of the co-Defendants

to adhere to a policy and procedure which required constant supervision of the inmates when

housed in a cell similar to the one where Mr. Jubeck was attacked by Mister Mitchell.

87.     In the alternative, all of the other named Defendants were not trained by any of the co-Defendants to adhere to a policy and procedure which required constant supervision of the inmates when housed in a cell similar to the one where Mr. Jubeck was attacked by Mister Mitchell.

88.     In the alternative, no policies, procedures and/or programs in place which required constant supervision of the inmates in this small area when the Defendants knew that a substantial risk of harm was created when an inmate like Mister Mitchell was held in one of those cells.

89.     No policy or procedure was in place to separate and/or classify inmates who were housed in the cell where this attack occurred.

90.     Here is a copy of the video footage of the Mister Mitchell attack upon Mr Jubeck:


https://www.dropbox.com/sh/6lk66dju69eijni/AADG_gUiP7XPyH1mW72gIeata?dl=0


91.     Specifically, the following is noted in the criminal complaint about the attack:

On Thursday, May 30, 2019 at approximately 9:00 AM, ACJ Corrections Officer Ian Jackson observed a disturbance inside the secured sally port of Pod 4A of the Allegheny County Jail.  Officer Jackson was patrolling the pod, and he responded to investigate the disturbance along with Officer Michelle Gildea, who was working at the pod's control panel a short distance away.  As he quickly approached, Officer Jackson observed an inmate he identified as Mister Mitchell, b/m/dob 1-3-93, assaulting the victim, inmate Derrick Jubeck, w/m/ dob 5-7-85.

Officer Jackson reported that he observed inmate Mitchell punch inmate Jubeck, lift inmate Jubeck, and slam inmate Jubeck's head on the ground, which appeared to render inmate Jubeck unconscious.  Following this, Officer Jackson gave orders for inmate Mitchell to stop as inmate Mitchell continued to punch the head and face of inmate Jubeck while inmate Jubeck remained unconscious.  As other corrections officers arrived to assist, inmate Mitchell ceased assaulting Jubeck and subsequently surrendered himself to ACJ Corrections Officer Justin Firestine who removed Mitchell from the scene.

…

On August 21, 2019 your affiant interviewed victim, Derrick Jubeck.  According to Jubeck, he entered the sally port of Pod 4A from inside the pod as instructed by a corrections officer he was unable to name.  Jubeck stated that he understood his detainer was lifted by the court earlier that day, and he was to report to the jail's intake/ release area.

Jubeck stated that he noticed Mitchell standing in the sally port and looking downward as Mitchell faced the opposite door leading into the hallway.  Jubeck stated that he approached Mitchell after the pod door latched behind him so that he could exit the sally port when the door leading to the hallway was unlocked remotely.  As Jubeck approached, Mitchell never said anything as Mitchell turned to his left and punched Jubeck in the left side of his face with is right hand.  Jubeck stated that he recalled raising both of his arms to defend himself to no avail and that he was immediately rendered unconscious.  According to Jubeck, he recalled regaining consciousness while lying in the back of an ambulance.  Jubeck stated that he did not know that Mitchell continued to

assault him until after he learned the extent of his injuries at the hospital.  According to Jubeck, the assault has permanently affected his hearing, vision, and cognitive abilities.

Your affiant reviewed and secured the jail's recorded security video, which is consistent with the observations of Officer Jackson and statements made by the victim.

92.     It is undisputed that the Plaintiff was classified at a minimum level.

93.     Defendants Jackson, Firestine, Gildea and/or Does saw that the Plaintiff was placed in the sally port with Mister Mitchell and should have monitored and/or supervised the holding cell constantly in order to prevent Mister Mitchell harming other inmates.

94.     Defendants Jackson, Firestine, Gildea and/or Does should have intervened immediately to remove the Plaintiff from this area when they knew of the substantial risk Mister Mitchell posed to other inmates.

95.     Defendants Jackson, Firestine, Gildea and/or Does should have not housed so many inmates in such a small room which was not capable of being monitored and/or supervised in a safe and constitutional manner.

96.     All of the Defendants knew that placing the Plaintiff in this sally port created a substantial risk of harm and none of the Defendants did anything to prevent this attack when they saw that the Plaintiff was placed into the sally port with Mister Mitchell.

23

97.     It is undisputed that Mister Mitchell was either: (1) classified at a maximum level; (2) classified as a violent inmate or predator; (3) misclassified by the Defendants at a lower level that did not reflect an accurate classification; and/or (4) not classified.

98.     It is undisputed that no policy and/or procedure existed at the Allegheny County Jail which separated inmates of maximum classifications with inmates of minimum classification when held or transferred through a pod's sally ports even though the defendants and Allegheny County knew based upon their own classification policy and procedure that a substantial risk of harm was presented to the lower classified inmates from the maximum classified inmates.

99.     It is undisputed that the Plaintiff would never have been allowed to be housed with Mister Mitchell if a classification policy and protocol existed at the ACJ.

100.    In the alternative, it is undisputed that the Plaintiff would never have been allowed to be housed with Mister Mitchell under any classification policy and protocol existed at ACJ at that time.

101.    In the alternative, it is undisputed that only one inmate is allowed in a sally port at a time if the room is too small for a number of inmates to be housed/held and ACJ knew this at the time of the attack by Mister Mitchell on the Plaintiff and still placed the Plaintiff in this sally port with the violent attacker.

102.    In the alternative, all of the Defendants knew that the sally port is a small area and presented a safety hazard to inmates placed in the sally port with other inmates who had a prior history of violence upon other inmates or correctional personnel and/or who were not properly classified or even classified.

103.    Prior to May 30, 2019, it is undisputed that the ACJ and the Defendants were in possession of video camera footage of the October 10, 2018 attack on an inmate done by Mister Mitchell.

104.    Prior to May 30, 2019, it is undisputed that the ACJ and the Defendants were in possession of misconduct reports for the attacks done by Mister Mitchell upon other inmates on October 10, 2018 and May 27, 2019.

105.    All individual Defendants and Defendant ALLEGHENY COUNTY agree that protocol and policy is in place at the jail in order to promote safety as well as for care, custody and control purposes.

106.    All individual Defendants and Defendant ALLEGHENY COUNTY recognize that violation of protocol and policy established at the jail more likely than not will result in injury to either inmates and/or other correctional staff.

107.    At all times relevant hereto, the Defendants did knowingly disregard the objective and/or excessive risk Mister Mitchell posed to the safety of other inmates on Pod 4A and/or the intake unit.

108.    At all times relevant hereto, during the course of Mister Mitchell's detention, the individual Defendants and Defendant ALLEGHENY COUNTY failed to recognize that Mister Mitchell presented an objective and/or excessive risk of violence to the safety of other inmates similar to the Plaintiff.

109.    At all times relevant hereto, the individual Defendant and Defendant ALLEGHENY COUNTY failed to be continuously alerted to threats of violence by Mister Mitchell's behavior.

110.    At all times relevant hereto, during the course of Plaintiff's detention, the individual Defendants and Defendant ALLEGHENY COUNTY failed to respond properly or adequately to the objective and/or excessive risk of violence posed by Mister Mitchell as described in his inmate file as well as in this Complaint.

111.    In addition to the above facts, the following occurred after the attack:

a.)   The Allegheny County Police closed its criminal investigation for this May 30, 2019 attack on June 3, 2019 with no charges filed;

b.)   Mr. Jubeck reached out several times to the Allegheny County Jail to reach someone about the attack that occurred on May 30, 2019 but was never contacted until August 21, 2019 by the Allegheny County Police when he contacted that police department;

c.)   The criminal investigation was reopened on August 21, 2019 after Mr. Jubeck contacted the Allegheny County Police;

d.)   Allegheny County Police did not review the footage of the attack or the reports until August 21, 2019;

e.)   At all times relevant, the criminal investigation was closed on June 3, 2019 without speaking to Mr. Jubeck;

f.)   Mr. Jubeck wrote requests and asked various individuals at the ACJ to notify the police about this attack but received no response until August 21, 2019;

g.)   The medical records of Mr. Jubeck were not reviewed until August 22, 2019 by the Allegheny County Police.

112.   On or about August 22, 2019, Mister Mitchell was taken into custody by Allegheny County Police at his residence.

113.   At all times relevant hereto, after the attack of May 30, 2019 upon Mr. Jubeck, the ACJ released Mister Mitchell from its custody even though all of the above Defendants knew of his history of assaults upon other inmates while incarcerated at the jail.

114.   At all times relevant hereto, Mr. Jubeck is the only reason why criminal charges were filed against Mister Mitchell and the Defendants never intended to inform the court system, the public or Mr. Jubeck that they were not filing any criminal charges regarding this attack of May 30, 2019.

115.   The ACJ and the defendants released Mister Mitchell to the community even though they knew of this violent and serious attack upon the Plaintiff.

116.   It is undisputed that all of the defendants knew how serious the Plaintiff's injuries were after this attack of May 30, 2019.

117.   As a direct and proximate result of the Defendants' conduct, Plaintiff suffered the following injuries:

a.)    Unspecified intracranial injury;

b.)    Loss of consciousness;

c.)    Traumatic Subarachnoid Hemorrhage with Loss of Consciousness for an unspecified duration;

d.)    Traumatic brain injury;

e.)    Stable burst fracture of first thoracic vertebra;

f.)    Post-traumatic headache;

g.)    Multiple rib fractures;

h.)    Fracture of base of skull;

i.)    Fracture of orbital floor, left side;

j.)    Zygomatic fracture;

k.)    Unspecified dislocation of right acromioclavicular joint;

l.)    Chest pain;

m.)    A broken back;

n.)    Dislocated collarbone;

o.)    Bleeding in his brain;

p.)    Hemorrhaging to multiple areas of the head and face, including subdural hematoma;

q.)    Closed Head injury;

r.)    Head injury;

s.)    Generalized trauma to his head and person;

t.)    post-traumatic stress, anxiety, pain and suffering.


118.    This is a picture of what Mr. Jubeck looked like after the attack from Mister

Mitchell which was taken by personnel at the ACJ:



Medical Emergency

4A Sallyport

Inmate Derrick Jubek #184069

May 30, 2019 @0900 Hours

Facial Swelling on left side of face.

Blood from nose and right ear.

119.   As a result of these injuries, Plaintiff has sustained the following damages:

a.   He has suffered and will suffer great pain, inconvenience, embarrassment and mental anguish;

b.   He may be required to pay sums of money for medical attention, medical supplies and medicines;

c.   His general health, strength and vitality have been impaired;

d.   His earning capacity has been reduced and may be permanently impaired; and,

e.   He has been and will in the future be unable to enjoy various pleasures of life that he previously enjoyed.

## COUNT I –PLAINTIFF v. INDIVIDUAL DEFENDANTS AND DEFENDANT ALLEGHENY COUNTY PURSUANT TO 42 U.S.C. §1983

120.   The Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

121.   At all relevant times, these Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of Defendant ALLEGHENY COUNTY and under the authority of their offices as law enforcement officers.

122.   Defendants deprived the Plaintiff of the rights, privileges, and immunities secured to him by 42 U.S.C. §1983 and by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as the rights, privileges and immunities provided by Plaintiff by the Pennsylvania state constitution.

123.   Plaintiff 's injuries and damages were the direct and proximate result of the Defendants' conduct as follows:

a.   In failing to recognize that the Plaintiff was the victim of a physical assault at the hands of Mister Mitchell;

b.   In failing to respond properly or adequately to the objective signs that the Plaintiff was at a substantial risk of harm from Mister Mitchell if he was placed in the secured sally port with him;

c.   In failing to properly monitor the inmates and/or other employees, servants and/or agents of the Defendants;

d.   In failing to provide a safe environment that would have prevented physical and emotional abuse Plaintiff endured at the hands of Mister Mitchell while incarcerated at Allegheny County Jail;

e.   In failing to review information concerning issues related to proper conduct of Corrections Officers and other staff of Allegheny County Jail;

f.   In failing to outline the procedures for the proper handling of investigations, misconducts and/or supervision of inmates on Pod 4A in regards to the types of classified inmates allowed to be held or transferred through a sally port with maximum level inmates;

g.   Deliberate indifference to the constitutional rights of the citizens of this Commonwealth;

h.   Deliberate indifference to the need to protect the citizens and inmates from physical attacks by other inmates;

i.   Deliberate indifference to their corrections officers' failure to adhere to policies and procedures which were put in place to protect both inmates and correctional staff in monitoring, classifying and watching inmates;

j.   Deliberate indifference to the obvious need for training and supervision of their corrections officers and other personnel;

k.   Failing to properly train their corrections officers, including the employees of the Defendant ALLEGHENY COUNTY regarding protecting inmates from physical abuse and mental abuse, when classifying/monitoring inmates;

l.   Failing to properly supervise their corrections officers and other personnel so that protocol and policy for supervision of a pod would be adhered to and would not unnecessarily place inmates at risk for physical abuse and mental abuse;

m.   In failing to train properly individual corrections officers and other personnel in safe methods of handling incarcerated persons and/or placing inmates together in sally ports;

n.      In failing to train properly individual corrections officers and other personnel in the monitoring/classifying of incarcerated persons under the care and custody of the Defendants;

o.      In failing to review information concerning issues related to physical assaults of inmates by other inmates;

p.      In allowing the assault and abuse of inmates by inmates;

q.      In violating policy and procedures with deliberate indifference;

r.      In failing to report to the proper authorities anything about the known physical assaults, abuse and other conduct being performed on the inmates by inmates;

s.      In implementing policies and procedures that infringed on the rights of inmates;

t.      In failing to properly research, check and investigate the prior work histories of its employees;

u.      In failing to investigate any complaints of prisoner abuse by other inmates;

v.      In failing to adhere to their own policy and procedures regarding the conduct of its correction officers, staff and/or personnel when they would interact with inmates;

w.      In failing to respond properly or adequately to the objective and/or excessive risk of inmate on inmate violence posed by Mister Mitchell;

x.      In failing to properly monitor the Plaintiff and/or Mister Mitchell;

y.      In failing to request intervention by experienced correctional personnel on the Plaintiff's behalf;

z.      In failing to properly reclassify Mister Mitchell after he physically assaulted an inmates several days before his attack upon the Plaintiff;

aa.)    In failing to prevent the attack on Plaintiff  in a timely manner;

bb.)    In failing to provide a safe environment that would have prevented the attack of the Plaintiff;

cc.)    In failing to monitor/house/hold inmates on Pod 4A appropriately under the circumstances;

31

dd.)  In failing to review information concerning issues related to inmate on inmate violence;

ee.)  In failing to monitor the conduct Mister Mitchell on pod 4A prior to this attack upon the Plaintiff and other protocols governing the supervision of pod 4A in a manner which would continuously alert them to violent behavior of Mister Mitchell;

ff.)  In failing to provide training in the training programs for both Allegheny County Jail correctional and other staff pertaining to proper supervision/classification/housing/transfer of an inmate on a pod and/or rounds and/or inmates;

gg.)  In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for violence;

hh.)  In failing to recognize that Mister Mitchell was a violent individual and a threat to other inmate's safety and care;

ii.)  In failing to house Mister Mitchell in a restricted housing unit due to his violent behavior;

jj.)  In allowing Plaintiff to be placed in the sally port with Mister Mitchell;

kk.)  In failing to conduct the assessment of inmates by qualified professionals trained to determine an inmate's level of violence risk;

ll.)  In failing to place the Plaintiff in the appropriate holding cell/sally port;

mm.)  In failing to provide regular and documented supervision/classification of Pod 4A and the sally port where the attack took place;

nn.)  In failing to take action when they received appropriate information that Mister Mitchell was a threat to other inmates on Pod 4A and any inmates put in sally ports with him;

oo.)  In failing to properly secure Mister Mitchell from harming other inmates or staff;

pp.)  In failing to follow the policies and procedures which govern Pod 4A and/or sally ports;

qq.)  In failing to properly document Mister Mitchell's prior attacks upon other inmates;

rr.)  In failing to outline the procedures for referring potentially violent inmates to other housing options at the jail;

ss.)   In failing to provide procedures for communication between shifts, correctional officers, administrators and Allegheny County Jail correctional personnel regarding the status of a pod in a clear, current and accurate fashion;

tt.)   In failing to outline an intervention plan on how to handle violent inmates;

uu.)   In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed attacks on inmates;

vv.)   In failing to provide procedures of documenting the identification and monitoring of potential or attempted attacks on inmates by inmates;

ww.)   In failing to monitor the CCTV and communicating the perceived risks prior to the attack on the Plaintiff;

xx.)   In placing two inmates in a sally port;

yy.)   In failing to monitor Mister Mitchell with a guard in the sally port with him at all times;

zz.)   In allowing the Plaintiff to be placed in the sally port with Mister Mitchell which created a substantial risk of harm to the Plaintiff which the Defendants knew about due to the history and/or classification of Mister Mitchell;

aaa.)   In failing to train correction personnel to intervene when they see an inmate is being placed in a substantial risk of harm by another correctional personnel;

bbb.)   Failed to conduct formal disciplinary hearings regarding the above incidents pertaining to Mister Mitchell;

ccc.)   Failed to conduct objective and full investigations of the incidents regarding Mister Mitchell and documenting his file and the ACJ's records accordingly;

ddd.)   Failed to implement a written policy and procedures outlining how a decision is made to file criminal charges against an inmate who has assaulted other inmates;

eee.)   Failed to implement a written policy and procedure outlining allowing correctional staff and/or some governmental entity to initiate criminal charges against inmates who violently assault other inmates in order to promote a culture of safety and personal responsibility;

fff.)   Failed to implementing policies and procedures where inmate on inmate violence was discouraged and prevented;

ggg.)   Failed to implementing a policy and procedure to properly investigate and identify witnesses to "inmate on inmate" assaults;

hhh.)   Failed to maintain a master records file or central records file of Mister Mitchell;

iii.)   Failed to add any comments sent with the inmate or add to the Master file by another jail or prison or special program regarding special circumstances, unusual or noteworthy behaviors, areas of concern and special security challenge areas such as prior misconducts for physical assaults of other inmates while incarcerated;

jjj.)   Failed to provide all notes and reports from any level of the organization or investigating agency such as local or state police, county police, sheriff department prepared in the course of their duties regarding the safety and security considerations, acts of violence or acts where the inmate is a victim of violence;

kkk.)   Failed to document of any concerns under PREA regarding an inmate's periods of incarceration;

lll.)   Failed to create, comply, and enforce a classification policy and procedure which shows the initial housing locations, security designations and any special issues that classification staff believes might have an impact upon an inmate's safety and the safety of others;

mmm.) Failed to conduct proper supervision policies and procedures for the sally port on pod 4A/intake for the room where inmates are held;

nnn.)   Failed to create, comply, and enforce training that promoted safety to inmates as well as staff such as proper supervision and documentation of files among many things;

ooo.)   Failing to create, comply and enforce written inmate separation decision process/procedures;

ppp.)   Failing to create, comply and enforce established staffing patterns/assignments for the jail staff;

qqq.)   Failing to create, comply and enforce training for all correctional staff regarding inmate supervision;

rrr.)    Failing to create, comply and enforce any policy and procedure for conducting a security classification review or dangerous review after inmate exhibits assaultive behavior;

sss.)    Failure to create, comply and enforce housing assignments at all times that reflect security designations, custody needs, special problems and behaviors;

ttt.)    Failure to document any formal disciplinary hearings that may have actually been conducted upon inmates who assaulted other inmates;

uuu.)    Failing to create, comply and enforce policy and procedure for movement of inmates for court proceedings or release which allow security comments or staff actions that would accompany such a transfer decision given the inmate's past actions against other inmates at minimum;

vvv.)    Failing to create, comply and enforce policy and procedures outlining how a decision is made to file criminal charges against an inmate who assaults another inmate in the ACJ;

www.)    Failing to adhere to the Performance Based Standards for Adult Local Detention Facilities promulgated by the American Correctional Association and/or PREA, state, local and federal statutes, and the like;

xxx.)    Failing to create, comply and enforce policy and procedure which properly categorizes the types of misconducts possibly filed against inmates who assault other inmates;

yyy.)    Failing to create, comply and enforce policy and procedure which determines if an inmate is a predator or a victim.

zzz.)    Failing to create, comply and enforce policy and procedure which identifies inmates who are having a mental breakdown and are exhibiting signs and symptoms through violent outbursts against other inmates or staff;

aaaa.)    Failure to properly supervise and monitor the inmates in intake during transfers to court and/or being released;

bbbb.)    Failure to properly supervise and monitor inmates in the cell where this attack occurred;

cccc.)    In leaving the inmates with no supervision or monitoring in this cell on May 30, 2019 when they knew that camera access was significantly limited and the room was small for the amount of inmates in it;

dddd.)    In housing too many inmates in the room at the time of the attack.

124.    The Defendants and Defendant ALLEGHENY COUNTY did not recognize and respond to the objective and/or excessive risk of violence posed by Mister Mitchell to other inmates while Mister Mitchell was housed on Pod 4A/intake and/or the sally port where the attack took place.

125.    Defendants, in depriving Plaintiff of his constitutional rights, were intentional, recklessly indifferent, willful, wanton, malicious, and outrageous.

126.    The actions of the individual Defendants as aforesaid resulted from and were taken pursuant to a policy, practice, and/or custom of the Defendant ALLEGHENY COUNTY, which policy, practice and/or custom is implemented by individual corrections officers and management.

127.    Defendant ALLEGHENY COUNTY had approved and condoned the procedures implemented by and enforced by the individual correctional officers and staff.

128.    The Defendants' failure to recognize or respond to the objective and/or excessive risk of "inmate on inmate" violence/abuse presented by Mister Mitchell while in the care and custody of the Defendant ALLEGHENY COUNTY caused the Plaintiff his injuries.

129.    Plaintiff also claims reasonable attorneys' fees and costs from Defendants as provided by 42 U.S.C. §1988.

WHEREFORE, the Plaintiff, DERRICK JUBECK, demands judgment against the Defendants for damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court.  JURY TRIAL DEMANDED.

## COUNT II – PLAINTIFF v. DEFENDANT
## ALLEGHENY COUNTY AND ALL THE INDIVIDAUL DEFENDANTSPURSUANT TO
## 42 U.S.C. §1983

130.    The Plaintiff incorporates by reference the above paragraphs of the within Complaint the same as though set forth herein and at length.

131.    All of these Defendants created an official policy, custom or practice of intentionally housing/holding minimum level inmates with maximum level/predator/violent inmates in sally ports regardless of the substantial risk of harm the maximum/predator/violent inmates posed to other inmates housed/held in the sally ports. This policy, custom, or practice was created with deliberate indifference to the safety and dignity of inmates like the Plaintiff. This policy was in effect at the time of the attack of Mister Mitchell on the Plaintiff.

132.    All of these Defendants created an official policy, custom or practice of intentionally housing/holding minimum level inmates with maximum level/predator/violent inmates in sally ports/intake holding cells regardless of the substantial risk of harm the maximum/predator/violent inmates posed to other inmates housed/held in the sally ports/intake holding cells. This policy, custom, or practice was created with deliberate indifference to the safety and dignity of inmates like the Plaintiff. This policy was in effect at the time of the attack of Mister Mitchell on the Plaintiff.

133.    All of these Defendants created an official policy, custom or practice of intentionally placing two inmates in a sally port even though they knew that this created a substantial risk of harm to the inmate who was not a violent individual. This policy, custom, or practice was created with deliberate indifference to the safety and dignity of inmates like the Plaintiff. This policy was in effect at the time of the attack of Mister Mitchell on the Plaintiff.

134.    All of these Defendants created an official policy, custom or practice of intentionally placing two inmates in a sally port without adequate supervision. This policy, custom, or practice was created with deliberate indifference to the safety and dignity of inmates like the Plaintiff. This policy was in effect at the time of the attack of Mister Mitchell upon the Plaintiff.

135.    All of these Defendants failed to train ACJ employees on the need to individually evaluate violent inmates like Mister Mitchell to determine whether the inmate should be placed in a cell alone or in a sally port alone instead of with other inmates. These Defendants were deliberately indifferent to the risk that placing the Plaintiff with Mister Mitchell in a sally port/intake holding cell would likely lead to a physical attack and abuse upon the Plaintiff.

136.    All of these Defendants made the decision to place Mister Mitchell with other inmates by the above conduct which was done in a deliberately indifferent manner.

137.    Plaintiff 's injuries and damages were a direct and proximate result of the Defendants' conduct as follows:

        a.)    In failing to train properly individual corrections officers in safe methods of handling incarcerated persons;

        b.)    In failing to train properly individual corrections officers in the monitoring of incarcerated persons under the care and custody of the Defendant ALLEGHENY COUNTY;

        c.)    In failing to properly train individual corrections officers to provide medical intervention to persons under the care and custody of the Defendant ALLEGHENY COUNTY;

        d.)    In failing to recognize that the behavior of Mister Mitchell created a substantial risk of harm to the Plaintiff;

        e.)    In failing to supervise properly individual corrections officers/personnel;

        f.)    In failing to train properly corrections officers/personnel in the recognition of objective and/or excessive risk of violence to persons under the care and custody of the Defendant ALLEGHENY COUNTY;

g.)     In failing to train properly corrections officers in violence prevention of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

h.)     In failing to train properly corrections officers in violence risk assessment of persons under the care and custody of the Defendant ALLEGHENY COUNTY;

i.)     In failing to train properly corrections officers in responding to facts that placed persons at an increased risk of violence under the care and custody of the Defendant ALLEGHENY COUNTY;

j.)     In failing to review information concerning issues related to supervising and monitoring Pod 4A and its sally ports;

k.)     In failing to provide training in pod supervision/classification/housing to all Allegheny County Jail correctional staff;

l.)     In failing to train their staff members who work with inmates to recognize verbal and behavioral cues which indicate the potential for violence;

m.)     In failing to recognize Mister Mitchell as being potentially violent;

n.)     In failing to provide regular and documented supervision of Pod 4A and its sally ports;

o.)     In failing to check on the inmates in Pod 4A and its sally ports;

p.)     In failing to outline the procedures for referring potentially violent inmates to other housing options at the jail;

q.)     In failing to provide procedures for communication between shifts, correctional officers, administrators and Allegheny County Jail correctional personnel regarding the status of a pod in a clear, current and accurate fashion;

r.)     In failing to outline an intervention plan on how to handle violent inmates;

s.)     In failing to have procedures in place to notify the Allegheny County Jail administrators, outside authorities and family members of potential, attempted or completed attacks on inmates;

t.)     In failing to provide procedures of documenting the identification and monitoring of potential or attempted attacks on inmates by inmates;

u.)     In failing to monitor the CCTV and communicating perceived risks;

v.)     In failing to reclassify Mister Mitchell after his violent attack on another
        inmate several days before his attack on the Plaintiff;

w.)     In failing to classify Mister Mitchell in any capacity;

x.)     In allowing the Plaintiff to be put in the sally port with Mister Mitchell
        when the Defendants knew of his violent behavior to other inmates;

y.)     In placing two inmates in a sally port;

z.)     In failing to monitor Mister Mitchell with a guard in the sally port with
        him at all times;

aa.)    In allowing the Plaintiff to be placed in the sally port with Mister Mitchell
        which created a substantial risk of harm to the Plaintiff which the
        Defendants knew about due to the history and/or classification of Mister
        Mitchell.

bb.)    In failing to train correctional personnel to not place two inmates in a sally
        port when one of the inmates has a history of violence against other
        inmates or inmates who are openly gay;

cc.)    All of the subparts listened in paragraph 112 and throughout this amended
        complaint are incorporated as if stated in whole and/or in part. The actions
        of the individual corrections officers as aforesaid resulted from and were
        taken pursuant to a policy, practice, and/or custom of these Defendants,
        which policy, practice and/or custom is implemented by individual
        corrections officers/personnel;

dd.)    In allowing too many inmates in one cell at one time;

ee.)    In failing to install cameras that were useful and able to help monitor the
        area.

138.    These Defendants had approved and condoned the procedures implemented by

and enforced by the individual correctional officers/personnel.

139.    Each individual Defendant acted individually, with supervisory authority and/or

in accordance with the policy, custom, or practice of the ACJ of placing inmates, like the

Plaintiff, with violent inmates, like Mister Mitchell, while detained at the jail, in deliberate

indifference to the significant risk of serious physical injury and/or emotional harm posed by this policy, custom, or practice to inmates like the Plaintiff.

140.   Plaintiff also claims reasonable attorneys' fees and costs from Defendants as provided for by 42 U.S.C. §1988.

WHEREFORE, the Plaintiff demands judgment against the Defendants for damages, together with court costs, attorneys' fees, interest, and all other relief permitted by the Court. JURY TRIAL DEMANDED.

## JURY DEMAND

PLAINTIFF REQUESTS THAT ALL ISSUES THAT MAY BE DETERMINED BY A JURY BE TRIED BY A JURY.

## PRAYER OF RELIEF

141.   WHEREFORE, Mr. Jubeck requests that this Court grant the following relief:

a.)   Declaratory judgment that the Defendants violated Mr. Jubeck's constitutional rights under the Fourteenth Amendment;
b.)   Compensatory damages against all Defendants;
c.)   Punitive damages against all individually named Defendants;
d.)   Attorney's fees and costs; and
e.)   All other relief this Court deems just and proper.


Respectfully submitted,


BY:   /s/  Steven M. Barth
       Steven M. Barth, Esquire
       Pa. I.D. #89395
       P.O. Box 23627
       Pittsburgh, PA 15222
       (412) 779-3806
       smbassociates@gmail.com

       Attorney for the Plaintiff

41